Alright, welcome to the 11th Circuit. We are here today for the case of Pace v. Commissioner of the Georgia Department of Corrections and we will hear first from, is it Mr. Potek, Mr. Potek, yes, okay, thank you. Good afternoon, your honors, may it please the court. Nathan Potek with the Federal Defender Program on behalf of Mr. Pace and I'll be presenting argument today on behalf of all of the appellants. The district court's sua sponte standing dismissal over appellee's concession is both procedurally and substantively wrong. First, the district court improperly relied on factual assertions made by counsel for appellees during an oral argument in ruling that appellants lacked standing. Second, contrary to Alabama legislative black caucus and the elementary principles of procedural fairness, the court failed to give appellants meaningful notice or an opportunity to present evidence of standing. And finally, the district court erred in its substantive standing determination by holding that appellants had failed even to allege an injury in fact, an identifiable trifle of harm, despite acknowledging that appellants had sufficiently alleged a discriminatory classification and despite the fact that appellee's arbitrary pursuit of an execution warrant for appellants without providing the promised procedural protections and notice provided to other death row prisoners independently constitutes a sufficiently imminent and non-conjectual injury to confer standing. This court should accordingly remand to the district court on any of those grounds. Couldn't the district court have made a different decision based on assertions from the state during the argument? Right? I mean, it seems to me from reading the discussions that everyone had taken for granted that standing was present in this case. Yes, all the parties below agreed that standing was present in this case. And so some of the, you know, kind of things that the state said I would have thought could be inferred from the complaint, even if you all didn't state them forthrightly. So I think there are a number of things that the factual findings that the district court makes that are not supported by the complaint and that are beyond the kind of pleadings and exhibits. So, you know, I think that the relevant area of the district court's order is pages 15 to 18 where there's, I think, maybe seven citations to the transcript. And I think a few of maybe the two most important ones are on page 17 when the court finds that the DAs could never obtain a warrant, and maybe the most important on page 15 when the district court found that it's up to the district attorney. So that is a factual finding that's not supported by the complaint. And actually, while it's, you know, maybe doesn't feel like a big jump from, you know, what is in the agreement, which says that the sole authority to obtain a warrant is left to the district attorney, that actually is a pretty big jump. And it leaves us with a difference from the district court kind of essentially building a scheme where the district attorney is the central role, central actor in the Georgia's execution scheme, and what was pled and, you know, what is kind of characterized by the Georgia Supreme Court and state versus federal defender program as a scheme where the attorney general's role plays the central, you know, role in the process and that the DA takes direction from the attorney general, not the other way around. Do you think that's a legal description of the state of play in Georgia or a factual description of how things really operate, maybe apart from the limited procedures that the statutes provide for? So I think that's, I mean, a factual finding. The legal state of play is, there's not that much to go from. I think maybe the most relevant statute, OCGA 71040, sets out that the superior court has to enter, the superior court of the county of conviction shall enter the execution order. And the Georgia Supreme Court has explained that because the district attorney is the only authorized party to represent the state in the superior court in criminal matters, that that has to come from the DA. But that's really the kind of all that's out there. So, you know, these statements that the district court relies on, that the DA may never, that it's up to the DA, that's not really based in the statute and it's not really based anywhere other than the say-so of counsel during arguments. And frankly, the order doesn't cite to anything other than the transcript. So I think those are kind of factual findings that the district court kind of relies entirely on counsel. Having some personal familiarity with this process, which is irrelevant here, but have you, are you familiar with a DA ever independently requesting a death warrant without any consultation with the Attorney General's office? Not to my knowledge, and which again, I think goes to support our version, the complaints version of how this scheme works, but I also think, you know, even to the extent of counsel for appellees get up here and disagree, I think that is an issue that could and should have been addressed in front of the district court and still can and should be on remand if this court finds that there's additional evidence that needs to be proved to show standing. But again, I think that all, which ties in a little bit to the district court's other air of failure to provide a notice and opportunity, but no, I don't, I'm not aware of any time where the DA has done that. And again, as the complaint alleges, it's really that the AG is driving the ship and the DA acts at the direction of the Attorney General and not the other way around. Now, given all that, I think, I guess one question would be why wouldn't your client have pleaded all that more specifically and have pleaded perhaps more specifically the stage of his particular case? So, I mean, I think all those facts are in the complaint. You know, frankly, I think the, and again, the record in the district court, I think supports this, that all the relevant parties here in the litigation recognize that Appellant's all had standing because, you know, it's kind of well understood that this is the way that the scheme is set up. And so, you know, whether it could have been a little bit straightforward perhaps, but I think, you know, that's clearly what the complaint sets forth is this is how the process is created. And again, that's the reason why, you know, appellees are who they are and it's not the district attorney. And frankly, the agreement itself that kind of underlies this whole litigation is between the Attorney Generals and the Capitol Defense Bar, which kind of further underscores our argument and the kind of structure of Georgia's execution scheme is that the Attorney General's are the one, the Attorney General's office is the one directing the parties. I mean, it would have made little sense for the Capitol Defense Bar to bargain with the Attorney General if district attorneys, as a matter of practice, were free to do whatever they want. What's the point? The whole idea of this agreement to begin with is that the Attorney General is the relevant party here. Do you know if they're, speaking of do you know of, do you know, are you familiar with any other agreements like this between Attorney General's offices and the Capitol Defense Bar? I mean, those seem like surprising entities to come to a contractual agreement. I don't question that they did. I take the Supreme Court's opinion for all that it's worth, but are you familiar with this happening in any other jurisdiction? No, Your Honor. Okay. Let me ask it to you this way. This is sort of a different way of looking at it. You know, the Supreme Court and we in other types of cases, for example, method of execution cases and collateral review type cases, have said time and time again that a litigant cannot wait until after the execution date has been set because you run out of time and it's just too late. So, like, to ask it from another way, when would be, I mean, when is a litigant supposed to file if not now as you have? I think that's a great point, Your Honor. I mean, you know, right, this Court has often, you know, cautioned the Capitol Defense Bar not to wait to the last second and I think it would be, you know, cause a lot of confusion and be inconsistent to say that this litigation could only be initiated after a warrant has been obtained. I think, you know, generally in terms of kind of the substantive standing analysis, you know, this is clearly imminent. You know, all of these appellants do have the prospect of an execution looming and that's language from this Court in Halford v. Allen, which is a 2009 decision, which is in a slightly different context that says that the prospect of an execution is looming after this Court denies federal habeas review. And so I think there's no question that these appellants all do have the imminent pursuit of an execution. And just to be clear, no, no, no, just to be clear, how many days is it from when the warrant issues until the execution, the latest execution could occur? So Georgia, I believe, has the shortest warrant window, which is 10 to 20 days, which is, you know, obviously incredibly short. So if you had to wait until, if you had to wait until the warrant issued, that would leave between, I guess, 10 and 20 days, I mean, at most 20 days to get through this entire process, right? And as little as 10 days, and obviously, as this Court knows, there would be no way to get through that without emergency proceedings and stays. And I will add one additional point that the relief requested here, much of the relief requested here is actually pre-warrant relief. It's the notice and spacing provisions in the agreement. So I think for an additional reason, it would be strange to find that this litigation is only justiciable after a warrant has been obtained when much of the requested relief has already been lost. And just in terms of imminence a little bit also, because I know the appellees discussed this a little in their response brief, there is a difference in who controls the standing conferring acts and how we analyze this. So in Lujan, in footnote two, they discussed that where the plaintiffs are in control of the standing conferring acts, we require a bit of a higher degree of immediacy. And that makes sense. In that case, the plaintiffs were going to visit the Nile crocodile, an endangered species, and they were in control of that. So the Court required more immediacy. But where, as here, the standing conferring acts are not in plaintiffs' and appellants' control, I think that increased immediacy is less required. And here, the standing conferring acts are fully within control of appellees. What paragraph do you think most clearly states that your client or any of the appellees are death-eligible? In the complaint? And I don't know that I wouldn't necessarily draw the line at death-eligible. I would say that, you know, any time after kind of 11th Circuit review would provide a standing, appropriate standing. I mean, I don't, sorry, Your Honor, I don't know if we specifically say where in the process they are. I can double-check that. But I think, you know, we allege that it's an eminent pursuit. And again, you know, at the standing phase, we were only at the motion-to-dismiss phase, so mere allegations suffice, and so. But if eminence is a legal question, I'm not sure that you can just say eminence rather than pleading. And I, look, I'll be honest, I suspect that it's easily provable that your clients are within the category that, of people that could make this argument of eminence. But I think there are places that you could probably infer it, but I just didn't know if I saw it clearly alleged in the complaint. And I'm wondering what the standard is for whether the district court and we would take account of facts that are fairly within inference of some statements versus statements that were more clearly pleaded. Right. So I think it is inferrable from the complaint, and perhaps the district court could have also taken judicial notice just of where their, you know, habeas procedural process was. That would be in the public record, you know, the denial of their 11th Circuit appeal. So yes, I think, especially at the motion-to-dismiss stage where, again, mere allegations suffice, I think that we have sufficiently alleged eminence in that respect. If I could talk just a little bit about the notice and opportunity error, unless there are any other kind of questions on what we were just discussing. So, you know, I think Alabama Legislative Black Caucus kind of sets a clear principle that district courts should not sua sponte, dismiss, without providing an opportunity to provide evidence of standing. And you know, these decisions that involve notice and opportunity are all kind of pretty fact-intensive and related to the precise kind of position of defendants and of what the district court says. So if I may, just a brief kind of review of what exactly happened in front of the district court. Hopefully, we'll provide some help. So, you know, appellees, defendants at the time, filed a motion-to-dismiss and a reply in support of their motion-to-dismiss and did not mention or raise standing in any capacity. The district court then scheduled oral arguments on that motion-to-dismiss as filed without providing any additional guidance of what the parties should be prepared to discuss. Then at the hearing itself, asked counsel for appellees whether appellants did have standing, and appellees conceded and said, yes, all three appellants do have standing. Then there was a little colloquy kind of back and forth about where, you know, some potential line drawing would be, and counsel for appellees landed on these three appellants all have standing and the rest of death row would not. And then the sole standing-related question posed to counsel for appellants was, do you agree that out of the 34, these three have standing and the other 31 do not? And then when counsel for appellants, which was me, explained that, yes, we agree with appellees, the court just said, okay, all right. And that was the extent of the standing-related discussion. And so, you know, I think the case law, again, supports the idea that that, wherever the notice and opportunity line is to be drawn, that that is not sufficient. And it could have been a closer call had appellees not conceded or had the district court proceeded in a different way. But on those facts, it's clear that insufficient notice and opportunity was provided. And I think City of Miami Gardens is particularly instructive, even though in that case, this court actually found that no additional notice was provided. In my reading, there was kind of three main buckets of arguments that they considered. And one was that the plaintiff there had not even created an inference of standing and kind of contrasted that with Alabama Legislative Black Caucus, where they found that the plaintiff had a reasonable belief that they had shown standing. And then two and three, that they had repeatedly received notice from both the district court and defendants. And so here, of course, there was no notice from defendants. And I don't think there could be any, you know, more reasonable belief of proving standing than counsel for the other side. Not only not raising standing, but affirmatively making the case that we did, in fact, have standing. And then again, there was certainly no repeated notice, but there was no real meaningful notice that the court had any standing concerns after the hearing. And certainly, you know, not that the court was going to essentially initiate a factual challenge to standing beyond the pleadings. I know a party can't ordinarily concede standing, but do you think the court is obligated in any way to give more credence to such an, perhaps, attempted concession if the party is the one who's in charge of the act that confers standing? Yes, absolutely. I think that's very important here. And I think it's also interesting that appellees were, you know, kind of very much aware of the, they were kind of uniquely aware of the process, generally. And also, right, I think that kind of goes back to that Lujan footnote, too, where, I mean, not just when plaintiffs are not in control, but when appellees, when defendants are in control of the standing conferring acts, then yes, I think that actually is a very relevant factor, Your Honor. I wonder, in Lyons, do you think if the police had said, like, yes, we're definitely going to grab this guy again, we're going to do the same thing? I think that would change the outcome, yes, Your Honor. If there are no further questions, I can reserve this, my time for rebuttal. Thank you. All right. Thank you very much, Mr. Potek. We'll hear next from Mr. O'Kelly. May it please the Court. At bottom, this is a straightforward pre-enforcement standing case, and as the District Court ruled, the plaintiffs lack standing. The plaintiffs claim that the Attorney General violated the Constitution by agreeing not to seek an execution warrant for other death row inmates, and their complaints allege repeatedly that the burden they will face is that if an execution warrant is issued, they will have less time to prepare for clemency hearings and other pre-execution litigation. But that makes the standing problem apparent. They will face that burden only if a superior court issues an execution warrant, and only if that happens before the contract expires. So when would you say that they have standing? It sounds like it's really a question of timing. Sure, Your Honor. I think that we would not dispute standing, and I understand that we have not disputed standing before, but we would not dispute standing at the point that the execution warrant is issued, because at that point... Isn't that a problem? I mean, we have said repeatedly in all different kinds of contexts, you can't wait until the warrant is issued, because it doesn't leave enough time, and if you knew about it earlier, and there was, you know, and you could have sought relief earlier, then we're not going to grant you a stay. And there's no way that the courts would get through this within 20 days, or maybe even 10 days. It could be as few as 10 days, if it were filed even on day one of when the warrant issued. So I'm just not understanding how this is supposed to work. It seems like a catch-22.  I think three points, Your Honor. The first is, I'm not sure that it would be a problem in the way that you just described as saying, well, you should have brought this sooner, if, in fact, you could not bring it sooner because there wasn't standing. I think that would be a good reason. But the second point is, just to be clear, as far as I understand in the Federal Defender Program case, when the Attorney General sought an execution warrant for Fresnel, they were able to stop that execution in the timeline after the warrant was issued. That would be a very similar situation here. William James Pye also, before his execution, brought a claim raising similar challenges. So I don't think that the tight timeline alone would bar relief. But the third point is that even if it might create timeline difficulties on the back end or require a TRO or stay or something like that, I don't see how that is a basis for overriding the irreducible constitutional minimum of standing. I think that these plaintiffs still have to satisfy the basic pre-enforcement standing requirements. I agree. They have to satisfy standing. But, I mean, I am understanding your argument to mean that in every single case, like a execution case, a collateral, a SOPL case, or not a collateral SOPL, collateral review case, you know, any kind of a 1983 case, whatever, that we and the Supreme Court have previously said you can't wait until the execution warrant issues. In every single case like that, under the theory that you're now espousing, then a litigant would have to wait until then to file and would be entitled to a stay. But we know that's not true. Why is this different in this case than in those other cases? Sure, Your Honor. Two reasons. I think the first reason is that in those cases, the inmates are typically challenging some kind of set execution procedure. It doesn't matter, though, because if they're not going to be, if their death isn't imminent, I mean, you've said it doesn't matter if their death isn't imminent. Right. But the second point is that there is actually, there's an additional variable here. It's not just speculation about whether the district attorney will refuse to obtain the warrant. I mean, I think that is one issue. That's a serious problem for plaintiffs. But there's another factor at play, which is that plaintiff's entire claim is based on the existence of a contract, and in particular, a COVID-era contract that was based specifically on COVID conditions. We are in 2025 now. I don't know, but didn't a Georgia court just recently say that two of the conditions haven't been fulfilled? True, Your Honor. Aren't we bound by Georgia's interpretation of its own law? I don't think that this court is bound by the Superior Court's ruling, and it was only a Superior Court ruling. That case actually just docketed at the Georgia Supreme Court on Friday. But right now, under the only opinion that we have to go by, the second and third conditions aren't fulfilled, right? I mean, it's kind of a problem. To be clear, the visitation condition, I don't believe the Superior Court reached. But that condition is entirely in control of the state, its visitation policies. As for the other condition about vaccines, effectively vaccines for newborns, even there, there's no finding or evidence that that's going to exist forever. So there's still... Well, I think it probably will under the current conditions, at least for the next three years, three plus years, right? I mean... I mean, all that gets to the merits, though, and I did not see in your brief where the Attorney General's office actually said, it's true what the district court said. We have basically nothing to do legally with seeking these execution warrants. Well, I would disagree slightly with that characterization of what the district court said. I think the district court acknowledged the fact that the Attorney General plays a role in the process, but the sticking point was, sure, the Attorney General typically initiates the process. But the sticking point is whether the district attorney follows through. Are you familiar with any case where the Attorney General did not take the lead on setting, on seeking the execution warrant? Well, two points, Your Honor. The first is, to answer directly, I'm not familiar with that. But the first point is, there are no allegations about that at all. But even if there were, I think that gets at a different issue, which is the Attorney General taking the initiative or the district attorney independently seeking an execution warrant. That's what was at issue in the Federal Defender Program case. We're talking about something different, not the district attorney going out and doing it, but the district attorney refusing to do it. And to be clear, plaintiffs have said that's a factual finding that the district court made, but in their own brief, they acknowledged that as a matter of law, the district attorney does have that legal power. The district attorney describing that, or sorry, the district court describing the district attorney's power and saying that it might never obtain an execution warrant was just a description of the legal powers that are undisputed across the board, that the district attorney does have that power. They, the plaintiffs are disputing the likelihood of that happening, but that still is just a legal issue going toward imminence. So even assuming that that's true, wouldn't it be a factual conclusion about whether the Attorney General's office has an important role in this process? No, Your Honor, I don't think it's a factual conclusion about the Attorney General's role in the process, because again, it's just a matter of the legal powers and the legal roles that the parties play. But if all that's relevant are the legal rules that are cited, then this agreement would have been worthless. I don't know why the defender would have sought such an agreement if the real power is with the DA. Doesn't that kind of put the lie to that position? No, I don't think so, Your Honor, because again, that's going to a different question. So the issue there about whether this agreement would be worthless is whether we would expect the District Attorney, without any say-so from the Attorney General, to go out and seek the execution warrant. That's what the Federal Defender Program case is talking about. We're talking about a different situation where the District Attorney refuses to obtain the warrant. And the reason that matters here, the fact that they have that legal authority, why that matters is because we are in a pre-enforcement posture. So we do have to apply the basic rule that typically pre-enforcement standing cannot be based on the discretionary acts of a third party. So no matter what, the fact that the District Attorney does have that power means that we're in that realm of pre-enforcement standing where we're necessarily having to get over the hurdle that for any burden to be imposed, the District Attorney has to agree with the Attorney General. So I'm not disputing or saying that the Court can't even credit— The contract is about the Attorney General seeking an execution warrant. So what happens after that, it seems to me, is irrelevant. It's about whether the Attorney General can or cannot seek the execution warrant. That's what the contract is about. That's right, Your Honor. But again, the sticking point in Federal Defender Program was that—well, let me say it this way. If the plaintiff's only asserted injury is the seeking the execution warrant or just the mere pursuit of the execution warrant, it's hard to see how that is an injury at all because to be clear about what we're talking— I would feel very injured if someone sought an execution warrant against me. No, but to be clear— I think that would be a decidedly negative occurrence in my life. I think it's important to keep in mind what that means. It's not saying that the Attorney General is going to the Superior Court and getting the warrant because the Attorney General can't do that. To say that the Attorney General is pursuing or seeking the execution warrant just means the Attorney General is asking the District Attorney to do it. I find it honestly astounding that that's the argument because we all know how it works. We know how it works. Whether it was properly pleaded is maybe a different question, but we all know how it works in Georgia and that the Attorney General seeking a warrant is what gets the process started. Well, two points, Your Honor. I think the first, as you just suggested, is of course we're talking only about a facial review. Setting aside whether the District Court made factual findings, we don't think it did. This Court can just do a facial review and as a matter of a facial review, there's no allegations about any past practices of any past District Attorney or Attorney General in the complaints. So, that enough sustains a facial review. Now, going past that though, and I take your point that... If this is also true, then why did the Attorney General's office effectively agree and seem indeed surprised when the District Court suggested that there might not be standing? Well, Your Honor, a few... Shift. Sure, Your Honor, a few points. I think on the one hand, in the record, the Attorney General's counsel statement was actually a little bit equivocal, conceding that she may be wrong. And it was an off-the-cuff response to a question. But the second point, Your Honor, is that the Attorney General just thinks that position was wrong. And of course, we are talking about standing where it can't be waived. And Judge Jones, to his credit, I think recognized these issues early on and put them in his order and kind of articulated this exact third-party discretionary act problem that because we're in a pre-enforcement posture, throws things off. But to go back to your earlier point about, you know, we all know how this works in Georgia. And that's kind of connected to Plaintiff's point about saying they wanted to present evidence. To be clear, it's not obvious what evidence they mean. It seems to be that the evidence they would want to present is about past District Attorney actions. Now, even assuming that in the past, District Attorneys have always done what the Attorney General has asked, there is a problem here under pre-enforcement standing principles for two reasons. First, that as black-letter law, typically, past enforcement doesn't support pre-enforcement standing. And the second reason why that applies here is by definition, necessarily, any evidence about any past District Attorney is going to be about different District Attorneys, not any that are relevant for these Plaintiffs in different circumstances, obviously involving different Plaintiffs. But by and large, all of those will also be pre-COVID. So any of that evidence, it's hard to close the gap between different actors and different circumstances to these specific District Attorneys who have never had any experience with seeking execution warrants. So I don't think the evidence or additional allegations would clear that hurdle. But to return back to where we are in facial review, there are certainly no allegations at the moment about any of this. But, I mean, I guess there are probably no allegations because everyone on both sides took it for granted. That may be true, Your Honor, but I think, again, Judge Jones identified the issue and to the extent the Court is concerned at all with sort of notice and opportunity issues, well, two points. I think this Court can always just conduct the facial review and Plaintiffs, of course, have had opportunity to argue standing now. But second, the dismissal was without prejudice. So if there are additional allegations that would support standing, there's nothing stopping that complaint. But again, I— But you're saying, though, that they can't have standing anyway until the warrant has actually been issued, which is, I guess, I look back at your brief and I guess I could take that from your brief, but it's really further than I expected the state to be going for all the reasons that Judge Rosenbaum has outlined. Well, yes, Your Honor, and again, I think that is just a matter of two forces at play. One is pre-enforcement standing principles, the need for non-conjectural injury and imminence. And in this case, it's not just standard imminence. It's not just, well, at some point in the future, the Attorney General will seek it and the District Court will agree. It's also that those things will happen before the contract expires, because if anything happens before— You know, I mean, I have a hard time even understanding—I don't understand why this contract was executed, but that's irrelevant. I don't—it depends on—the state will decide when that contract is going to end. I mean, I don't—I don't see how—as long as this contract is at least arguably in place, I don't understand why we have to wait—why we have to wait for that contract to end before anyone can say that they're harmed by not being a party to it. Well, to be clear, once the contract ends, if there was never an execution warrant sought against these plaintiffs, they will have never suffered the injury that they claim. The injury that they claim— Right, but if we have—it's maybe an interminable contract, assuming that there's not a COVID vaccine for infants, then if that's the argument, then that would be an interminable contract. And so, therefore, we—I mean, I think until the state decides what this contract really means, I don't see how we can wait until the contract expires. Well, I don't think that it's a—to clarify the position, I don't think it's a matter of waiting until the contract expires. It's that when the contract expires, this entire case is over. And so the problem for pre-enforcement standing purposes is that the court has to guess that an execution warrant will be obtained before the contract expires. It's not— Does the nature of the constitutional injury dictate some of the timing concerns that we're talking about here? So, for example, a regular 1983 case, let's just say it was prison conditions. So-and-so is subject to harsh conditions such that they violate the Eighth Amendment. That has nothing to do with the execution date. That would trigger upon the nature of the condition, right? Yes, Your Honor. As I understand it, yes. Okay. Let's turn—we all agree with that principle. Let's turn to the complaint here. As I understand the complaint here, the injury isn't that I'm not going to be able to investigate and I'm going to be deprived of my procedural due process rights at the point of when the execution warrant is signed. It is that I need months advance with my attorney in order to do investigation, in order to present something to the attorney—to the governor for clemency and for pre-execution litigation and collateral attacks. And those things happen in the months before a warrant is signed. Given that that is the nature of the allegations here, of the constitutional allegations here, is it not that the injury happens and it's not that the seeking of the warrant is enough to trigger the right to then start investigating because I know a warrant is coming down the pike rather than the warrant itself being signed? So two points, Your Honor. I may slightly disagree about their injury as it's alleged in their complaint. I mean, I take it to be based on when the execution warrant is issued. Assume that my reading is the right one. Yeah, yeah, of course, Your Honor. The line between seeking the warrant and the warrant being issued, I mean, I think that's a little bit of a blurry line if we're assuming the way—  Well, assuming— Counsel, not really in the way that you framed it. What you have said is there are two separate acts here. There is the act of seeking it and then there's the district attorney's sign-off going to the superior court and getting it. So in reality, those are very different things. We're not slicing it too thinly. They are separate acts. And why that matters is because the seeking it, knowledge of seeking it, especially under this contract which gives, I think, what, like a year notice or six months notice or 30 days notice when they're going to start seeking it, that allows then for counsel who has many clients to then put that client first to start the investigation for clemency so that there is a sufficient clemency investigation done when the warrant is signed. Under that view, isn't the seeking the injury as opposed to the signature of the warrant or the issuing of the warrant by the superior court? Your Honor, I am not entirely sure about how much notice of the reaching out to the district attorney as opposed to the actual action in the superior court as part of the contract. But I would still return to the underlying point that there is still a matter of conjecture and imminence problems, even dialing it back to just the attorney general talking to a district attorney, because it's still a matter of discretion. There's no legal timeframe for any of these things. Right, but the complaint does seem to allege a number of instances where the attorney general is saying it will or will not seek something. And it also seems to suggest the complaint that the attorney general is actively seeking warrants against those not covered by the allegations here, or by the contract, specifically Presnell and Pye. Go ahead. Sure, Your Honor, I do think Pye would be the example of plaintiff in kind of the class of these plaintiffs. But again, I would return back to the underlying pre-enforcement standards here, which is that the existence of past enforcement does not necessarily support pre-enforcement standards. Right, not necessarily. In a case like Lyons, where it depends on a whole host of factors that are largely outside of anyone's control, that this person gets picked up again, et cetera, et cetera, here there's a limited universe of people that this could apply to. How many current death row inmates fall within this category? My understanding at the time is that it's three. That's at least what was discussed in the trial transcript. Whether any additional inmates' appeals have exhausted since then, I'm not completely sure. Could the concession of standing, and certainly the district court is right that it's not bound by any concession, but could the concession of standing not be an indication that the attorney general is actively seeking a warrant or will actively seek a warrant soon to a substantial likelihood against these three plaintiffs? It would depend on, I think, the specific language that was used, and that's not the kind of language that was used here. I mean, I take the point if the attorney general had come into court and said, well, of course these plaintiffs have pre-enforcement standing because we plan on doing this imminently. That's not the position that counsel took. It was much more generic and vague and really kind of... Right, we're not contesting standing. It was, well, sure, but it was more of an incomplete statement of the law that because this could happen in the future, we think that's enough, not that because we plan on doing this imminently, that's enough. So I don't think that, I mean, I won't dispute that as some general matter, there could be a litigation position. What about the fact that you're litigating this? Is that not sufficient indication that you, the attorney general, is serious about seeking warrants against those not covered by the agreement? Well, Your Honor, I mean... Because otherwise, you just agree, hey, these guys are covered. We're not going to seek a warrant against them, so we'll wait until this whole thing is litigated. Sure. I mean, I take your point, Your Honor. I don't think... I'm not making a point. I'm asking you a question. No, I mean, I don't think that the fact that the attorney general was defending the discretion to do something indicates that he necessarily is going to imminently. And I mean, again, I would return to the point that... But we're just adding that this gets to, so like, you've now disaggregated three separate things, but we're talking about a concession that's made that there is no standing issue to the district court, plus the fact that there's serious litigation going on on whether these particular folks are covered or not, plus the fact that Pai, who was not covered by the agreement, not only did the attorney general seek a warrant, it got one and carried out the execution. Does that not together indicate that there's some imminence ahead with regard to seeking a warrant for these three plaintiffs? No, Your Honor. I don't think so, because there... What more needs to be? What's the magic words that need to be there? Well, I don't know that there are any magic words, but I mean, I think there are plenty of things going the opposite way. I mean, again, to return back to the underlying law here, it's not a situation where there's some kind of statute saying, this is the death penalty statute. Within this amount of time, the attorney general must seek and the district attorney must obtain an execution warrant. There's no prescribed timeline. There's no prescribed basis. It's a matter of discretion, and it's a matter of a completely nonspecific timeline. And so, I think that setting aside that the district attorney is just defending the fact that particular people aren't part of this contract, or that he didn't violate the Constitution by not agreeing to contract with them, I mean, again, I don't think that the attorney general not saying, yes, I violated the Constitution, I don't think that by itself supports saying, I'm going to imminently seek an execution warrant for these people. You might have a different argument in a state where the attorney general, or if it's the governor's job, or whoever's kind of in charge of this, specifically disclaimed any intention to effectuate death sentences, right? But here, I'm not familiar with any authorities saying that Georgia will no longer carry out the death penalty. Is that so? That's true, Your Honor. So, why would we assume, then, that the attorney general would not seek to carry out the death penalty? Well, two points. I mean, the first is, again, it's a matter of discretion, but also there's the eminence issue about the timeline and the contract aspiring. But the second point that I would return to is... How eminent does that have to be? Well, I think that the legal standard speaks of immediacy and within a fixed period of  Neither of those things are present here. There's nothing to conclude that anything will happen immediately, and there's also... But eminence, find me a case that says eminence has to be within a... There's no other way in any case besides a very short set period of time. I just don't think you have it, and this is entirely different than a Fourth Amendment violation or something like that against a diffuse set of people. I mean, this is... There are, as you've said, three people in a state that regularly carries out the death penalty. It's just really difficult to sell me on the idea that that is so kind of unimaginable that this is actually going to happen to these people, that the court should assume that it won't. Well, sure, Your Honor. But again, I think the assumption that, of course, Georgia eventually, or at some point, will try to execute these people, and even the additional assumption, which I don't think is entirely supportable, that the district attorney will necessarily go along with it. Has the district attorney ever refused to go along with it, to your knowledge? Not to my knowledge, no. But again... Can you imagine the press releases and whatnot for district attorneys who refuse to carry out a lawfully imposed... To do their part in carrying out a lawfully imposed sentence? Well, sure, Your Honor. I can imagine the press releases going both ways. In a liberal county, that could be very favorable for a liberal or death penalty-opposed county. So I mean, I think that point could cut both ways. Again, none of this... I believe in the real world, though. I mean, at some point, I think you have to agree that certain things are going to happen. Otherwise, you just lose all credibility. Well, sure, Your Honor. And that's what I was saying, is that even if the court assumes that, yes, eventually these things will happen, I still think there's the two-fold imminency problem. One, just standard imminency. There's no fixed period of time. It is kind of conjectural about when. And two, the fact that the contract might expire. Now, I mean, I take the court's points about the ongoing existence of the contract, but the entire point of pre-enforcement standing is to avoid deciding a case in which no injury would have occurred at all. Again, if there is...  The injury is the seeking of the warrant. That's what they're claiming, is that they will be injured if the Attorney General seeks the warrant, where he would not be allowed by the contract to seek the warrant against these other parties. That's the injury. You can't wait until after the... You can't demand for pre-enforcement standing that you wait after the injury occurs in order to have standing. That would be post-enforcement standing. Well, yes, Your Honor, but it's still the pre-enforcement question of when that's going to happen. Right, but the injury they're claiming is not death, right? The injury they're claiming is their susceptibility to one particular step in the process that other people are not susceptible to. And you're saying that they can't bring suit until that step in the process happens. And at that point, it's not pre-enforcement standing. Yes, Your Honor. I mean, I do think that the upshot here is that they face, at least in the state of play right now, they do face insurmountable barriers for pre-enforcement standing. So yes, the upshot would be that it would have to be post-enforcement. I take that point. But I think that's just a matter of applying the legal principles. Then what's a case where someone could achieve pre-enforcement standing under your approach to standing? Sure. So, say that you have a death row inmate who's challenging a specific execution procedure, some aspect of lethal injection, and he has a medical condition that nobody reasonably expects can change. We don't know exactly when the execution... But how do you know that that procedure will be used? Because, I mean, who knows? There's discretion. Maybe someone will call up the execution that day, or maybe they'll find a new supplier of the drug cocktail or a million other things. How can that person really prove that this is imminently going to happen to them? Sure. I think there are a couple of issues going on there. One is that the set policy, we wouldn't expect to be that likely to change. And there may be variables and potentialities that are unlikely. Is there not a set policy here that we cannot expect to be unlikely to change? Well, that's where I get back to the nature of the contract. Again, it's a COVID-era contract based... But again, the only court that's ruled on it has said that, you know, I mean, whether you want to interpret it as one or two conditions have not been met yet. You know, we still have those conditions. And that is the law as Georgia has interpreted it. Yes, Your Honor. And again, I would submit that those conditions will expire. They are meant to. The contract isn't supposed to last forever. And that gets into the timeline problem here with whether any burden will happen before the case effectively is over. Thank you. All right. Thank you, counsel. Mr. Potak. Just two quick points, Your Honors. In terms of pre-enforcement review, I mean, Judge Leck, to your point, the very fact that we're here I think shows standing. I mean, in those cases often talk about the state's defense of a statute, the state's continued defense of their ability to pursue a prosecution can confer an imminent and credible threat. And so here, too, I think the appellee's continued defense of their ability to pursue an execution warrant satisfies that. In terms of whether this court can just go ahead and do a facial review, you know, I think if in the normal course, if the district court erred as a court of review, not first view, this court remands to the district court. But even if this court were to do a facial review de novo, we certainly think that we have sufficiently pled as a facial matter. And to Judge Leck's point, I think paragraphs 23 and 30 of the complaint, which discuss the attorney general's pursuit of an execution warrant with Mr. Presnell and Mr. Pye, speaks to that. And again, Judge Grant, to your point, this is just something that everyone knows. It's in the fabric. It's in the air we breathe. And so maybe that's why it wasn't kind of explicitly alleged as a point, but that's well understood. And again, I think paragraphs 23 and 30 also speak to that. So if there are no other questions, I will sit down. And I would ask this court to vacate the district court's order and either remand with instructions for a hearing to put on evidence of standing or just reverse the dismissal for lack of standing for a decision on the merits. Thank you, Your Honors. Thank you, Counsel. We'll be in adjournment.